# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| ADRIENNE A. BASSUK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-CV-336 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on the motion for summary judgment filed by Defendant United States of America (ECF 25). Plaintiff Adrienne Bassuk filed a response in opposition (ECF 27) and the United States filed a reply (ECF 29). For the reasons discussed below, the motion is DENIED.

## BACKGROUND

On August 15, 2016, Adrienne Bassuk was entering the Social Security Administration office located at 2122 Lincolnway Court in Fort Wayne, Indiana, for the purpose of checking on benefits resulting from the recent death of her husband. As Bassuk entered the foyer area of the SSA office, she slipped and fell. Bassuk alleges that "[a]s a result of her fall, [she] sustained serious personal injuries and has incurred damages which include, but are not limited to, medical expenses, pain, suffering, emotional distress, permanent impairment and disfigurement, and loss of enjoyment of life's activities." Complaint, p. 2. Bassuk filed a federal tort claim with the SSA on May 17, 2018, which the Administration denied on August 21, 2018. Bassuk brings this action under the Federal Tort Claims Act to recover damages for injuries she incurred when she fell, alleging as follows:

The Plaintiff's fall and all of Plaintiff's resulting damages were caused by the negligence of the Defendant, which negligence includes, but is not limited to, the following acts or omissions:

A. The failure of the Defendant to exercise reasonable care to maintain its premises in a safe condition for business invitees such as the Plaintiff.

B. The failure of the Defendant to warn business invitees such as the Plaintiff of any dangerous conditions existing on its premises.

C. The failure of the Defendant to have suitable mats or other devices so as to prevent the hazardous condition resulting in Plaintiff's fall.

Complaint, p. 2.

**I. Undisputed facts.**

The parties have stipulated to most of the underlying facts, and the following recitation of those undisputed facts is taken from the parties' summary judgment briefs.

It was raining lightly when Bassuk arrived at the SSA building and she observed that the ground outside was wet. Bassuk was alone when she fell and no one witnessed her fall. On that morning, a cleaning contractor finished cleaning the lobby/vestibule at 8:56 a.m. and left the floor dry. Bassuk arrived a little after 11:00 a.m. A man named Anthony Henry drove Bassuk to the SSA building but did not see her fall because he was still in his car when she entered the building. When Henry went into the building he did not see puddles or leaks, but did notice that the floor appeared wet from people walking in and out with water on their shoes or umbrellas. Social Security Assistant Manager Jaimi Dohrman, Operations Supervisor Shaquayia Eagans, and a security guard responded to the vestibule. Eagans observed footprints from the rain but no standing water. Dohrman observed wet areas on the vestibule floor but no puddles. Later that day, Dohrman prepared an Incident Report that stated that Bassuk fell at 11:30 a.m. and stated as

follows: [A] visitor slipped and fell in the foyer upon entering the building. There had been heavy rainfall and there were some wet areas in the foyer. Caution signs were on display in the lobby but not in the vestibule itself. The SSA office was busy that day and there were a lot of cars in the parking lot. All visitors to the SSA office must pass through the vestibule area before entering the lobby of the building through a set of double doors. The warning sign had been placed earlier in the lobby area because it was rainy outside. The Defendant was aware that the floor mat and the tile floor would be slippery when they were wet. Prior to Bassuk's fall, there were no warning signs posted in the vestibule area and no one from the SSA took action to clean up water that was on the floor in the vestibule area from the time it started raining that morning until the Plaintiff's fall. Henry went into the building about 30 seconds after Bassuk. He observed the security guard standing near Bassuk, who was lying on her back on the floor in the vestibule. Henry did not recall seeing a floor mat in the vestibule, but did notice the floor was wet from people walking in and out.

## II. Disputed facts.

There are only a few disputed facts, as set forth below.

1. Bassuk alleges that "[a]s she entered the [SSA] office vestibule area . . . [she] slipped and fell on the tile floor." Plaintiff's Memorandum in Support, p. 2 (citing Bassuk Deposition, Plaintiff's Appendix, (ECF 28), Exh. D, pp. 31-39).

The SSA disputes this factual assertion, arguing that "[t]he exact location of Plaintiff's fall is unclear. Plaintiff repeatedly testified in a 2018 state court deposition that she fell with both feet on a wet gray/black mat. . . . Plaintiff testified in a 2019 federal court deposition that she fell on hard tile that was wet and slippery." Defendant's Memorandum in Support, pp. 2-3 (citing

Bassuk Deposition, Exh. 1 (ECF 26-1); Photograph, Exh. 8 (ECF 26-8); and Bassuk Deposition, Exh. 2 (ECF 26-2)). The SSA insists that "whether Bassuk slipped on wet tile or fell on a fabric mat is disputed." *Id.*, p. 3.

2. Bassuk alleges that "[p]rior to Plaintiff's fall, the Defendant was aware that customers were dragging water into the vestibule area and that the floor in the vestibule area was wet. . . . Prior to the Plaintiff's fall, the Defendant had posted a warning sign inside the lobby area which was not visible to persons entering the front door of the vestibule area." Plaintiff's Memorandum, p. 3 (citing Eagans Deposition, (ECF 28), Exh. B; Photographs, *id.*, Exh. F). The SSA disputes this assertion, arguing that "Social Security employee Shaquayia Eagans did testify the vestibule floor was wet[.] . . . But Eagans never said she knew the floor's condition before Bassuk fell and indeed testified she did not know the floor's condition between 9:20 a.m. and 11:30 a.m., including whether anyone mopped or dried the floor." Defendant's Reply, p. 2.

3. Bassuk alleges that "[w]hile Mr. Henry was in the vestibule area, Jaimi Dohrman came out and asked the security officer 'where is the "be careful, slippery signs?"'" *Id.*, p. 4 (citing Henry Deposition, Exh. C). The SSA responds by contending that "Dohrman in her deposition denied [asking] the security officer where the "be careful, slippery signs" were. Defendant's Reply, p. 3.

## STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). "[S]peculation and conjecture" also cannot defeat a motion for summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

## DISCUSSION

The parties agree that Indiana state law governs Bassuk's claim. To succeed on a negligence claim, Bassuk "must present enough evidence for a reasonable jury to conclude that (1) [the SSA] owed [her] a duty, (2) it breached that duty, and (3) that breach proximately caused [her] injuries." *Jones v. Hoosier Energy Rural Elec. Coop., Inc.*, 2019 WL 3413576, at *2 (S.D. Ind. July 29, 2019) (citing *Benton v. City of Oakland City*, 721 N.E.2d 224, 232 (Ind. 1999)). The parties also agree that Bassuk "was a business invitee of the Defendant at the time of her fall[.] Accordingly, the Defendant had a duty to exercise reasonable care for the Plaintiff's protection while she was an invitee on the Defendant's premises." Plaintiff's Memorandum, p. 5; *see* Defendant's Memorandum, p. 5 ("Because Plaintiff was a business invitee, the Social Security Office had a duty to exercise reasonable care to protect her while on the premises.") (citing *Pickering v. Caesars Riverboat Casino, LLC*, 988 N.E.2d 385, 390 (Ind.Ct.App. 2013)). The

SSA adds that "[a] landowner is not strictly liable for falls and has a duty only to eliminate unreasonable risk of harm on the property, not all risk." *Id.* (citing *Hammand v. Allegretti*, 311 N.E.2d 821, 826 (Ind.Ct.App. 1974); *Hale v. SS Liquors, Inc.*, 956 N.E.2d 1189, 1192 (Ind.Ct.App. 2011)). "A possessor of land is subject to liability only if it '(a) knows of or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk for harm to such invitees, and (b) should expect they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.'" *Id.* (quoting *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991)). "To show constructive knowledge, the plaintiff must point to a condition which 'has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care.'" *Id.*, p. 6 (quoting *Wal-Mart Stores, Inc. v. Blaylock*, 591 N.E.2d 624, 628 (Ind.Ct.App. 1992)).

The SSA argues that it is entitled to summary judgment because Bassuk cannot establish that the SSA breached its duty and, therefore, cannot establish a necessary element of her negligence claim. Defendant's Memorandum, p. 4. The SSA argues that Bassuk "cannot show that any [SSA] employee had actual or constructive knowledge of any alleged hazard" because she "has presented no evidence that any [SSA] employee had actual knowledge of a hazardous condition in the vestibule. She also has offered no evidence of constructive notice. . . . The mere fact that it rained the morning of Bassuk's fall does not impute constructive knowledge to the [SSA]. . . . Under these circumstances, Bassuk cannot establish any breach of duty." *Id.*, pp. 7-8.

In her response brief, Bassuk argues that "[t]he record before the Court establishes that

the [SSA] employees had actual knowledge of the hazardous condition posed by the wet floor in the vestibule area and, at a minimum, had constructive notice, either of which are sufficient to satisfy Plaintiff's burden and requires denial of the Defendant's [m]otion." Plaintiff's Memorandum, p. 6. Bassuk insists that "at the time of the Plaintiff's fall, it had been raining heavily for approximately two hours. The record also reflects that the incident occurred on a Monday[,] which was a very busy day for the [SSA] office. Mr. Henry testified that he had to park a distance away from the door because of the number of cars in the parking lot." *Id*.

Bassuk argues that "[t]he fact that the Social Security employees knew of the hazardous condition in the vestibule[] is demonstrated by the following testimony of Shaquayia Eagans:

. . .

Q. [Now] [d]o you remember what the weather conditions were that day?

A. Yes sir.

Q. What were they?

A. Rainy.

Q. And because it was raining, were people dragging water into the vestibule area?

A. Yes sir.

Q. And was the floor wet in the vestibule area?

A. Like, I would say yes sir.

Plaintiff's Response, pp. 6-7 (quoting Eagans Deposition, Plaintiff's Appendix (ECF 28), p. 15). Since it is undisputed that it had been raining, at times heavily, in the couple of hours prior to her fall, Bassuk contends that "[t]he record before the Court clearly establishes that, even if the

Defendant did not have actual knowledge of the hazard, it had constructive knowledge by virtue

of the fact that the condition had existed for nearly two hours prior to the Plaintiff's fall." *Id*., p.

8. Bassuk argues that "the hazard here had existed for a sufficient period of time that the

Defendant and its employees, in the exercise of reasonable care, should have discovered the

hazard and taken action to protect the Plaintiff." *Id*.[1] Bassuk notes that "[f]urther, the Defendant

had posted a warning sign inside the lobby area, but did not post any warning sign in the area in

which the hazardous condition existed." *Id*., p. 9. Bassuk insists, then, that she "has presented

evidence to establish that the Defendant had notice of the hazardous condition and has therefore

met her burden in establishing the essential elements of her claim against the Defendant.

Summary judgment is accordingly inappropriate and Defendant's motion should be denied." *Id*.,

p. 12.

---

[1] The Seventh Circuit has noted that "Indiana courts have found constructive knowledge when a condition 'has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care.'" *Waldon v. Wal-Mart Stores, Inc., Store No. 1655*, 943 F.3d 818, 822-23 (7th Cir. 2019) (quoting *Schulz v. Kroger Co*., 963 N.E.2d 1141, 1144 (Ind.Ct.App. 2012)). In affirming the district court's grant of summary judgment in favor of Wal-Mart, the Seventh Circuit noted that "[a]pproximately five to ten minutes before Waldon's fall, an employee visually inspected the area where Waldon fell and did not observe any hangers, debris, or other potential hazards on the floor. Given this short time frame between inspection and fall, the district court properly concluded no reasonable jury could find Wal-Mart had constructive knowledge of the hanger on the floor." *Id*. In the present case, it is undisputed that it had been raining for a couple of hours before Bassuk arrived at the SSA office and that SSA employees knew there was water on the floor (at least in the lobby area). An employee had mopped and dried the floor shortly before 9:00 a.m. A caution sign had been placed in the lobby, but not in the vestibule or foyer where Bassuk fell. For these reasons, the Court cannot conclude as a matter of law that the SSA *did not have* the requisite actual or constructive notice that an unreasonably dangerous hazard existed at the time of the incident, and summary judgment in favor of the SSA is therefore inappropriate.

As stated above, the sole issue before the Court on summary judgment is whether the SSA breached its duty of care. The SSA insists that "[a]ny knowledge employees had of rain outside or in the lobby does not show awareness of hazardous rain in the vestibule. Eagans's testimony that she saw water in the vestibule after Bassuk fell similarly does not show constructive notice prior to the fall." Defendant's Reply, p. 3. In short, the dispositive question is, what did the SSA employees know and when did they know it? This issue can only be resolved by a jury, which will have to hear the testimony of the witnesses in court and assess their credibility. The same goes for Bassuk's conflicting prior testimony about whether she fell on a tile floor or a mat. If a mat was on the vestibule floor, that fact could impact a jury's determination of whom to believe and whether the SSA had any actual or constructive knowledge that the floor in the vestibule area presented an unreasonable risk of harm. In addition, Bassuk insists that after she fell, SSA employee Jaimi Dohrman asked a security guard where the "be careful, slippery signs" were, which Dohrman, in her deposition testimony, denied asking. The SSA concedes in its reply brief that "Bassuk has designated facts from which a trier of fact could find in her favor on these points, so the court may assume them as true for purposes of summary judgment. But, if the case proceeds to trial, the court will need to resolve these disputed facts." *Id.*, p. 3.

Bassuk has presented facts that, when taken as true for purposes of summary judgment, create a material issue of fact that only a jury can resolve. Put another way, Bassuk has presented disputed material facts from which a breach of duty can be inferred, which is sufficient to survive summary judgment. As another district court recently noted, "'[u]nder Indiana law, the question of breach is "usually a matter left to the trier of fact."'" *Ellis v. Hancock Cty. Sheriff's Dep't.*,

2020 WL 32503, at *4 (S.D. Ind. Jan. 2, 2020) (quoting *Mangold ex rel. Mangold v. Ind. Dep't of Nat. Res.*, 756 N.E.2d 970, 975 (Ind. 2001)). "Additionally, summary judgment is 'rarely appropriate' in negligence actions, because they are particularly fact sensitive and 'are governed by a standard of the objective reasonable person–one best applied by a jury after hearing all of the evidence.'" *Id*., (quoting *Wooten v. Caesars Riverboat Casino, LLC*, 63 N.E.3d 1069, 1073 (Ind.Ct.App. 2016)). "'Only where the facts are undisputed and lead to but a single inference or conclusion may the court as a matter of law determine whether a breach of duty has occurred.'" *Id*. (quoting *Mangold*, 756 N.E.2d at 975). "As in most negligence actions, the question of breach in the instant case is fact intensive and must be decided by a jury." *Id*.

## CONCLUSION

For the reasons explained above, the motion for summary judgment filed by the Defendant United States of America (ECF 25) is DENIED.

Date: April 6, 2020.

  /s/   William C. Lee  
William C. Lee, Judge  
U.S. District Court  
Northern District of Indiana